UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEROME POLVAY, individually on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TD BANK, N.A., and DOES 1-10, inclusive,<br><br>Defendant. | Case No.  1:22-cv-04758<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jerome Polvay ("Plaintiff"), on behalf of himself and all persons similarly situated, who resides in Monmouth County, New Jersey, alleges the following, based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations, against Defendant TD Bank, N.A. ("TD Bank" or the "Defendant"), which has a principal place of business at 1701 Route 70 East, Cherry Hill, New Jersey 08034:

## I.   INTRODUCTION

1. TD Bank offers a service to its account-holder customers, as set forth in its account agreements, by which it permits customers to use the ATM or debit card issued by TD Bank at non-TD Bank ATM machines, including for requesting a cash withdrawal or a balance inquiry. For use of this service, TD Bank assesses an out-of-network fee ("OON Fee") in the amount of $3.00 for each cash withdrawal or balance inquiry. This consumer class action case arises from Defendant's breach

of contract and breach of the covenant of good faith and fair dealing as a result of Defendant's systematic assessment of unwarranted OON Fees for balance inquiries that were never requested by the customer, in breach of its uniform account agreement. Specifically, TD Bank improperly assesses double OON Fees for a balance inquiry of an account during the same transaction.

2. In the case of Plaintiff, Plaintiff is a TD Bank account holder who utilized an ATM machine owned and operated by third-party ATM operator FCTI, Inc. ("FCTI"), which supplies ATMs with a uniform screen interface at all 7-Eleven stores nationwide. The FCTI screen interface only presents a single balance inquiry prompt in its screen flow through which customers may request a balance inquiry, but TD Bank unlawfully assesses *two* OON fees for a balance inquiry when its customers use the FCTI ATMs. Indeed, no customer could have requested multiple balance inquiries of the exact same account during the same ATM transaction.

3. Plaintiff, on behalf of the class of all TD Bank customers who were assessed double OON Fees for a balance inquiry of a single account during the same ATM visit, and a subclass of all TD Bank customers who were assessed double OON Fees for a balance inquiry of a single account during the same visit at an ATM machine operated by FCTI and located in 7-Eleven stores, brings claims of breach

of contract and breach of good faith and fair dealing against the Defendant, seeking damages, restitution, injunction, and other appropriate relief.

## II. PARTIES

4. Plaintiff Jerome Polvay is a citizen and resident of Asbury Park, New Jersey, and a TD Bank checking account holder.

5. Defendant TD Bank, N.A. is a Delaware corporation, with its headquarters and principal place of business located in Cherry Hill, New Jersey. The Defendant is one of the largest banks nationwide and operates branches throughout the United States, including in this District.

## III. JURISDICTION AND VENUE

6. This Court has original jurisdiction over the action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interests and costs, and at least one member of the proposed Classes (defined below) is a citizen of a different state than the Defendant.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Also, the Defendant's principal place of business is located in this District.

## IV.    FACTUAL BACKGROUND

A.    **TD Bank's Express Contractual Obligations**

8.    Plaintiff has a TD Bank checking account, which is governed by TD Bank's standardized Account Agreement and Fee Schedule. TD Bank issues debit cards to its checking account customers, including Plaintiff, which allow them to have electronic access to their checking accounts for purchases, payments, and ATM withdrawals at both TD Bank and non-TD Bank ATMs.

9.    Pursuant to TD Bank's standard account agreement:

> **ATM Transaction Types**
> You may access your Account(s) by ATM using your ATM Card or Visa® Debit Card and Personal Identification Number (PIN) to:
> a) Make deposits to Checking, Statement Savings, and Statement Money Market Accounts at TD Bank ATMs;
> b) Get cash withdrawals and/or transfer funds from and between Checking, Statement Savings, and Statement Money Market Accounts linked to your Card;
> c) Make envelope-free deposits at many TD Bank ATMs;
> d) Get information about the Account balance(s) in the Checking, Statement Savings, and/or Statement Money Market Account(s) linked to your Card.

*See* Exhibit 1 (emphasis added).

10.    Similarly, TD Bank's Fee Schedule states:

> Each withdrawal, transfer, & balance inquiry conducted at a non-TD ATM - $3.00
>
> For transactions conducted at non-TD ATMs, the owner and/or operator of the TM (or the network) may assess a fee […] at the time of your transaction, including for balance inquiries.

*See* Exhibit 2.

4

11. Accountholders, including Plaintiff, are on notice of two conditions relevant to this lawsuit: 1) if they request a balance inquiry at a non-TD Bank ATM, they will be charged a fee by TD Bank; and 2) that fee will be $3.00.

12. The word "inquiry" means "a request for information,"[1] and the account agreement refers to "get[ting] information" about account balances. Therefore, TD Bank is only authorized to assess a $3.00 OON Fee for a balance inquiry if the customer requests to get information regarding an account balance. Conversely, TD Bank is *not* permitted to assess an OON Fee for a balance inquiry through an ATM prompt which does not permit a balance inquiry to be even made. Moreover, TD Bank is not permitted to assess double OON Fees for a single request for information regarding the balance of a single account during the same ATM transaction.

**B.     TD Bank Systematically Breaches its Account Agreement**

13. The uniform interface screen flow at all FCTI ATMs located in 7-Eleven begins with a screen which asks the customer, "Would you like to view your Account Balance?", and button options for "Yes" and "No". Upon pressing "Yes," the next prompt provides the option for the customer to view the balance information for their checking, savings, or credit card. Upon selecting one of these accounts, the

---

[1] *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/inquiry. Accessed 27 May. 2022.

5

FCTI machine transmits a balance inquiry request through the ATM network to the customer's bank—here, TD Bank. TD Bank then provides the balance information and assesses the customer an OON Fee for a balance inquiry. Meanwhile, the ATM machine receives the balance information and displays that balance information on the screen to complete the customer's request to inquire their balance information. Plaintiff does not challenge that pressing the "Yes" button here and selecting an account for which the balance information is requested is a balance inquiry request. This is because this prompt allows the customer to instruct the ATM machine to request information to be able to view their balance information for a selected account.

14.   Now that the balance inquiry has been completed, this prompt (the "Second Fee Prompt") requests if the customer would like to *print* the balance information that is <u>already displayed</u> on the screen and continue to a cash withdrawal. This Second Fee Prompt cannot possibly be considered a balance inquiry because the question does not request any information at all. And the only two button options are "Continue," which is the only way to proceed to the cash withdrawal, and "Cancel," which ceases the entire ATM interaction. By pressing the "Continue" button, as Plaintiff did, the only instruction any customer could have possibly given through the Second Fee Prompt is a request to print the balance information for the exact same account that was already inquired, paid for, and is

6

currently displayed on the screen. Simply stated, the printing of a receipt for the balance inquiry transaction displayed on the screen is not a balance inquiry under the contract, but TD Bank unlawfully always assesses a second OON Fee, resulting in the systematic assessment of double OON Fees for a balance inquiry of a single account during a single ATM transaction.

C.  **TD Bank's Obligations Pursuant to the Covenant of Good Faith and Fair Dealing**

15.  To the extent that TD Bank claims it has any discretion whether to assess OON Fees for non-balance-inquiry transactions, TD Bank also systematically infringes upon the intended benefits for the customers based on the account agreement for the benefit of itself and third-party ATM operators.

16.  Third party ATM operators such as FCTI design their ATM interfaces and are incentivized to make design decisions that cause unwarranted out-of-network transactions, and banks are incentivized to turn a blind eye to these unwarranted out-of-network balance inquiries based on the millions of dollars of additional revenue generated for both the third-party ATM operator, including FCTI, and the banks, including TD Bank. Specifically, for each unwarranted out-of-network balance inquiry registered at FCTI's ATMs, TD Bank assesses an additional/double OON Fee in the amount of $3.00 to its customers, and then takes approximately $0.25 from these unlawfully assessed OON Fees and pays them through the ATM network to FCTI in the form of interchange fees. Therefore, both

the bank and the ATM operator mutually profit from the bank's unlawful assessment of the unwarranted OON Fee, at the enormous expense to the customers.

17. TD Bank has been privy to widely known industry-wide knowledge that for over a decade, independent ATM operators have engaged in schemes to artificially create additional balance inquiry transactions. Several industry forums have touted the financial benefits to Independent ATM deployers ("IADs") of utilizing Balance Inquiry at Start. For example:

> Many IADs do not include balance inquiries as an option during a transaction. Although the ATM doesn't charge the customer, **IADs can derive significant interchange revenue from these transactions. ATMs that are set to suggest balance inquiries at the start of transactions can expect a significant increase in the number of balance inquiries** performed by the machine.

*See* ATM Atom, at http://www.atmatom.com/5-ways-to-boost-atm-portfolio-profitability/ (last viewed July 11, 2018) (emphasis added).

> Enable "balance inquiry at start" on Every ATM—an easy step to make, **"Balance Inquiry at Start" can increase your balance inquiries 20 to 30 percent**—at minimal cost. By making this slight adjustment in programming, the incremental revenue it produces can make quite a difference.

*See* ATM Marketplace at https://www.atmmarketplace.com/blogs/five-ways-to-increase-atm-profitability/ (last viewed July 11, 2018) (emphasis added).

> Once Balance Inquiry At Start is enabled, **deployers can expect between 20-30 percent of their transactions to be balance inquiries**, whereas before such transactions might have been 10 percent or less.

*See* Slawsky, Richard, *Five Ways to Boost the Profitability of an ATM Portfolio,* ATM Marketplace White Paper, 2011, at 2 available at: http://www.grantvictor.com/pdfs/Five%20Ways%20to%20Boost%20ATM%20Profitability.pdf (last viewed July 11, 2018) (emphasis added).

18. Moreover, and even more damning, TD Bank has access to its own customer account transactional records, including for transactions transpiring at FCTI machines located in 7-Eleven—one of the largest convenience stores in the country—which took these schemes to the most extreme levels. And based on information and belief, TD Bank's own records demonstrate that nearly all of its customers who requested a balance inquiry at these machines were unlawfully assessed double OON Fees for over *four years*.

19. Furthermore, as part of every out-of-network transaction, TD Bank receives a large batch of data and information that includes the customer's card number, the identity and location of the ATM machine, the type of transaction (such as balance inquiry or cash withdrawal), and date and time information. TD Bank already utilizes an automated system whereby it filters this data it receives from out-of-network ATMs for holders of premium TD Bank accounts whose OON Fees are waived, and immediately and automatically waives their fees. Upon information and belief, TD Bank is likewise capable of filtering the same data to automatically waive

9

the second of any unwarranted double OON Fee for a balance inquiry of the same account during the same transaction but fails to do so.

20. Thus, despite common knowledge of rampant industry-wide manipulations and fraud, TD Bank's access to and presumed knowledge of its own transactional records, financial accounting and audits, and TD Bank's capacity to protect its customers from being assessed unwarranted OON Fees, TD Bank has done nothing to ensure that it was not assessing additional/double OON Fees for balance inquiries that were never requested, except for only its most wealthy customers who qualify for its premium accounts.

D.  **Plaintiff's Experience**

21. On October 12, 2021, Plaintiff placed his TD Bank ATM Debit card into the FCTI ATM located at a 7-Eleven convenience store at 1239 2nd Avenue, New York, New York to make a quick $40.00 cash withdrawal. Plaintiff placed his card into the machine and entered his PIN. He was immediately asked:

**Would you like to view your account balance?**

22. Plaintiff was confused – believing that he might have pressed the wrong button the menu screen. He did not realize that a menu screen had not been presented because he was in a hurry. Wanting to get to his intended cash withdrawal, he quickly pressed "YES" and viewed his account balance. The next screen asked him if he would like to "print [his] Balance and continue the Transaction?" Still confused, but

wanting to get to the cash withdrawal, he pressed, "continue." At that point, a receipt was printed and his transaction was abruptly ended. The next screen asked him to re-enter his PIN. At that point, he was again asked if he would like a receipt for the transaction, and then was finally presented with the main menu screen through which he was able to select the cash withdrawal option and withdraw cash. Plaintiff does not recall seeking another balance inquiry.

23. Following his transaction, Plaintiff was surprised to learn that he was assessed, in addition to the cash withdrawal surcharge paid to FCTI ($2.95), two separate $3.00 fees from TD Bank for making balance inquiries, and an additional $3.00 fee from TD Bank for making a cash withdrawal. He was charged $11.95 in total fees for making a $40.00 withdrawal. Plaintiff is only challenging the second, phantom balance inquiry fee.

24. Had Plaintiff known that FCTI would register a second OON balance inquiry during the same transaction, he would have considered other options for reviewing his account balance.

25. Immediately following his transaction, TD Bank twice debited a $3.00 OON ATM fee from his account directly related to his supposed requests for balance inquiries.

26. Plaintiff intends to continue to use third party ATMs, including ATMs owned by FCTI at times when he finds them convenient, when he does not have time

11

to visit TD Bank's ATMs. Plaintiff is seeking an injunction to prevent himself and others from being assessed OON Fees by TD Bank for second, phantom balance inquiries at FCTI ATMs. Because ATM transactions are so common, the likelihood of Plaintiff falling victim to this improper business practice persists in the future.

## V.   CLASS ALLEGATIONS

27.   Plaintiff brings this action on his own behalf and all others similarly situated. The "Class" includes:

> All TD Bank checking accountholders in the United States who within the applicable statute of limitations were assessed multiple out-of-network fees for a balance inquiry of the same account during the same ATM visit.

The "FCTI Subclass" includes:

> All TD Bank checking accountholders in the United States who within the applicable statute of limitations were assessed multiple out-of-network fees for a balance inquiry of the same account during the same ATM visit at a FCTI ATM located in a 7-Eleven store.

28.   Excluded from the Class and the FCTI Subclass (collectively, the "Classes") are Defendant, its subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which the Defendant has a controlling interest.

29.   Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add a subclass(es) if necessary before this Court determines whether certification is appropriate.

30. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to Class discovery, the Classes consists of thousands of members or more, the identify of whom are within the exclusive knowledge of and can be ascertained by resorting to the Defendant's and related ATM records. The Defendant has the administrative capability through its computer system and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

31. The questions here are ones of common or general interest such that there is a well-defined community of interest among the Classes' members. These questions predominate over questions that may affect only individual members of the Classes because the Defendant has acted on grounds generally applicable to the Classes.  Such common legal or factual questions include, but are not limited to:

 a. whether the TD Bank improperly collected OON Fees from their customers, including Plaintiff, without ensuring their customers performed, engaged or otherwise consented to balance inquiries;

 b. whether TD Bank breached their contracts by collecting OON Fees for transactions that did not occur;

 c. whether TD Bank breached their contracts with their customers, including Plaintiff;

  d. whether TD Bank reserved discretion in defining the circumstances in which a customer would be deemed to have engaged in a balance inquiry that would give rise to a corresponding OON Fee;

  e. whether TD Bank failed to exercise such discretion in good faith; and

  f. whether Plaintiff and other members of the Classes have sustained damages as a result of the TD Bank's wrongful business practices described herein, and the proper measure of damages.

32. It is impracticable to bring members of the Classes' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

33. Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same breach of contract and breach of good faith and fair dealing by the Defendant, as described herein.

34. Plaintiff is more than an adequate representative of the Classes in that he has suffered damages as a result of the Defendant's improper business practices. In addition:

    a. Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

    b. there is no conflict of interest between Plaintiff and the unnamed members of the Classes;

    c. Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

    d. his legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

35. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

36. The Defendant has acted, or refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the classes as a whole.

37. All conditions precedent to bringing this action have been satisfied and/or waived.

## VI.     FIRST CAUSE OF ACTION

**BREACH OF CONTRACT & BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
(Against Defendant on Behalf of the Classes)

38.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

39.     Consumers, including Plaintiff, and TD Bank have contracted for bank account deposit, checking, ATM, and debit card services. TD Bank has represented to Plaintiff that in the event Plaintiff utilizes a non-TD Bank branded ATM to perform a balance inquiry, TD Bank will charge a $3.00 OON Fee.

40.     No contract provision authorizes TD Bank to assess additional/double unwarranted OON Fees to Plaintiff and the proposed Classes for balance inquiries that were never requested.

41.     Whether by common law or statute, all contracts, including TD Bank's Account Agreement and Fee Schedule, impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the

power to specify terms constitute examples of bad faith in the performance of contracts.

42. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

43. TD Bank has breached the covenant of good faith and fair dealing in the contract through utilizing its contractual discretion to assess unwarranted OON Fees that were never requested and by failing to ensure that Plaintiff and members of the Classes would not be assessed multiple OON Fees for a balance inquiry of a single account during the same transaction.

44. Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the account documents.

45. Plaintiffs and members of the Classes have sustained damages as a result of TD Bank's breach of contract and breach of the covenant of good faith and fair dealing, under New Jersey law. As New Jersey law on breach of contract and breach of the covenant of good faith and fair dealing is the same or substantially the

same with respect to all other states in which TD Bank does business, Plaintiffs assert this claim on behalf of the Classes.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendant for himself and the members of the Classes as follows:

(a)  certifying this matter as a class action;

(b)  designating Plaintiff as appropriate Class representative and his counsel as Class Counsel;

(c)  declaring TD Bank's assessment of unwarranted/double OON Fees for balance inquiries, including at FCTI ATMs, to be wrongful, unfair, and a breach of contract;

(d)  equitable relief enjoining TD Bank from further engaging in its unlawful practice;

(e)  restitution of all relevant OON Fees paid to the Defendant by Plaintiff and the Classes, as a result of the wrongs alleged herein, in an amount to be determined at trial;

(f)  disgorgement of the ill-gotten gains derived by the Defendant from its misconduct;

(g)  actual damages, in an amount according to proof;

(h)  punitive and exemplary damages, if permitted by law;

(i) pre-judgment interest at the maximum rate permitted by applicable law;

(j) costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

(k) such other relief as this Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: July 26, 2022

**LYNCH CARPENTER, LLP**

By: */s/ Katrina Carroll*
Katrina Carroll
katrina@lcllp.com
111 W. Washington St., Ste. 1240
Chicago, IL 60602
Tel.: 312-750-1265

Todd D. Carpenter
todd@lcllp.com
(Eddie) Jae K. Kim
ekim@lcllp.com
1350 Columbia St., Ste. 603
San Diego, California 92101
Telephone: (619) 762-1900

*Attorneys for Plaintiff and the Proposed Class*